1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

9   KENNETH PATRICK HIBBLER,

10         *Petitioner*,                                    3:07-cv-00467-RCJ-VPC

11   vs.                                                    ORDER

12
13   JAMES BENEDETTI, *et al.*,

14         *Respondents.*

15
16          This habeas matter under 28 U.S.C. § 2254 comes before the Court for a final decision

17   on the merits as well as upon petitioner's motion (#49) for an evidentiary hearing.  The motion

18   for an evidentiary hearing will be denied following upon *Cullen v. Pinholster*, 131 S.Ct. 1388

19   (2011), because, as discussed herein, the state supreme court's rejection of petitioner's

20   claims was neither contrary to nor an unreasonable application of clearly established federal

21   law on the record presented in the state courts.

22                                      ***Background***

23          Petitioner Kenneth Hibbler seeks to set aside his 2005 Nevada state conviction,

24   pursuant to an *Alford* plea,[1] of child abuse and neglect with substantial bodily harm.

25          Hibbler waived a preliminary hearing.  The State's proffer at the *Alford* plea reflects that

26   the State would have sought to prove the following if the case had gone to trial.

27          [1] *See North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)(holding that a
28   defendant can enter a valid guilty plea while still maintaining his innocence where there is a factual basis for
     the plea and the plea is voluntary, knowing, and intelligent).

1    In the early morning hours of July 24, 2003, Hibbler's eight-year-old daughter was

2 awakened by a sharp pain in her wrist.  She saw that her wrist had been cut.  She asked her

3 father for help.  He told her to go back to sleep and that he would help her in a few hours.

4    When she awoke again, it was early afternoon.  A county constable was knocking on

5 the door in connection with an eviction of Hibbler.  Petitioner looked out through the peephole,

6 told his daughter to be quiet, and then came over and cut her on the left side of the throat.

7 Hibbler then went back to the door, told the constable to wait, and took his daughter to the

8 bathroom and cut the other side of her throat.  He took her into the bedroom, told her it was

9 for her own good, and attempted to cut her again.  She was able to break free and run.

10    At this point, the constable opened the door, saw Hibbler and his daughter with blood

11 on them, and helped remove the daughter from the apartment.  Hibbler thereafter locked

12 himself in the bathroom.  When he was removed, he was cut basically from ear to ear.[2]

13    Hibbler maintains that he had taken an anti-anxiety medication then called Ativan (a/k/a

14 lorazepam).  He had no prior criminal record.

15    Prior to his plea, Hibbler was charged with first degree kidnapping with the use of a

16 deadly weapon, attempted murder with the use of a deadly weapon, and battery with the use

17 of a deadly weapon resulting in substantial bodily harm.[3]

18    Hibbler entered a plea on the Thursday before a hard trial date on the coming Monday.

19 Under the written plea agreement, Hibbler entered a plea of guilty pursuant to *Alford* to a

20 single count of child abuse and neglect with substantial bodily harm, and the State agreed to

21 stipulate to a sentence of five to fifteen years.[4]

22    Petitioner challenged his conviction in a state post-conviction petition.

23

24    [2]#18, Ex. 18, at 7-9.  In summarizing factual assertions made in the state court record, the Court

25 makes no credibility determination as to the veracity of any declarant or witness or any factual finding as to
the truth or falsity of any factual assertions.  In this instance, the Court summarizes the factual assertions

26 solely as an indication of evidence that would have been available to the State had the matter gone to trial.

27    [3]#18, Exhs. 3 & 5.

28    [4]#18, Ex. 1, at electronic docketing page 9; *id.*, Ex. 17.

### Standard of Review on the Merits

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect. 131 S.Ct. at 1411. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court based on the record presented to the state courts; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 131 S.Ct. at 1398-1401.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." 540 U.S. at 16, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state district court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable."

1  *E.g., Mitchell*, 540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

2  2004).

3      To the extent that the state court's factual findings are challenged, the "unreasonable

4  determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g.,*

5  *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal

6  courts "must be particularly deferential" to state court factual determinations. *Id*. The

7  governing standard is not satisfied by a showing merely that the state court finding was

8  "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

9         . . . . [I]n concluding that a state-court finding is unsupported by
          substantial evidence in the state-court record, it is not enough that
10         we would reverse in similar circumstances if this were an appeal
          from a district court decision. Rather, we must be convinced that
11         an appellate panel, applying the normal standards of appellate
          review, could not reasonably conclude that the finding is
12         supported by the record.

13  *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

14      Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct

15  unless rebutted by clear and convincing evidence.

16      The petitioner bears the burden of proving by a preponderance of the evidence that

17  he is entitled to habeas relief. *Pinholster*, 131 S.Ct. at 1398.

18                           ***Governing Substantive Law***

19      The Supreme Court decisions in *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602,

20  36 L.Ed.2d 235 (1973), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203

21  (1985), sharply curtail the possible grounds available for challenging a conviction entered

22  following a guilty plea or an *Alford* plea. As the Court stated in *Tollett*:

23         . . . . [A] guilty plea represents a break in the chain of
          events which has preceded it in the criminal process. When a
24         criminal defendant has solemnly admitted in open court that he
          is in fact guilty of the offense with which he is charged, he may
25         not thereafter raise independent claims relating to the deprivation
          of constitutional rights that occurred prior to the entry of the guilty
26         plea. He may only attack the voluntary and intelligent character
          of the guilty plea by showing that the advice he received from
27         counsel was not within the [constitutional] standards [established
          for effective assistance of counsel.]

28

                                        -4-

411 U.S. at 267, 93 S.Ct. at 1608.  Accordingly, "while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." *Id.*[5]

In *Hill*, the Court held that the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to challenges to pleas based on ineffective assistance of counsel. 474 U.S. at 58, 106 S.Ct. at 370.  Accordingly, a petitioner seeking to set aside a plea on this basis must demonstrate: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that the defective performance resulted in actual prejudice. *Hill*, 474 U.S. at 58-59, 106 S.Ct. at 370.

On the performance prong, the question is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from his perspective at the time.  In this regard, the reviewing court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  That is, there is a strong presumption that counsel acted for tactical reasons rather than through sheer neglect. *Pinholster*, 131 S.Ct. at 1404.  The reviewing court therefore must not simply give counsel the benefit of the doubt but instead must affirmatively entertain the range of possible reasons counsel may have had for proceeding as they did. 131 S.Ct. at 1407.  In so doing, the reviewing court inquires into only the objective reasonableness of counsel's performance, not counsel's subjective state of mind. *Id.*

On the prejudice prong, as a general matter under *Strickland*, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  A reasonable probability requires a "substantial," not just a "conceivable," likelihood of a

---

[5]Ninth Circuit law confirms that the *Tollett* and *Hill* waiver and bar rules apply to *Alford* or *nolo contendere* pleas to the same extent as unqualified guilty pleas. *E.g., Doe v. Woodford*, 508 F.3d 563, 566 n.2 & 568 (9th Cir. 2007); *Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007); *Ortberg v. Moody*, 961 F.2d 135, 137-38 (9th Cir. 1992).  *See also North Carolina v. Alford*, 400 U.S. at 35-38, 91 S.Ct. at166-68 (comparing *nolo contendere* and guilty pleas).

1  different result.  *Pinholster*, 131 S.Ct. at 1403.  Application of this general principle to the

2  specific context of a plea leads to the requirement that the petitioner "must show that there

3  is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

4  would have insisted on going to trial."  *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.  Such a

5  determination must be made objectively, without regard for the "idiosyncrasies of the

6  particular decisionmaker."  *See* 474 U.S. at 59-60, 106 S.Ct. at 370-71.

7      While surmounting *Strickland*'s high bar is "never an easy task," federal habeas review

8  is "doubly deferential" in a case governed by the AEDPA.  In such cases, the reviewing court

9  must take a "highly deferential" look at counsel's performance through the also "highly

10 deferential" lens of § 2254(d).  *Pinholster*, 131 S.Ct. at 1403 & 1410.

11                              ***Discussion***

12 ***Ground 1***

13      In Ground 1, petitioner alleges that he was denied effective assistance of counsel

14 because trial counsel falsely advised him that he had no defense to the charges.  According

15 to petitioner, counsel advised him that there was no insanity defense to the charges in

16 Nevada, that he had absolutely no defense, and that his only recourse was to take full

17 responsibility for his actions.  He alleges that he would have not entered a plea and that he

18 instead would have insisted on going to trial if counsel had not misled him that he had no

19 potential defenses to the charges.  Petitioner maintains, in particular, that he would not have

20 entered a plea if he had been advised that he potentially had a viable insanity defense based

21 upon an alleged paradoxical reaction to Ativan.

22      During pretrial proceedings, the defense filed a notice of an expert witness for Dr.

23 David Schmidt, Ph.D, to testify "regarding the neuropsychology of the defendant."[6]

24      As noted in the factual background, Hibbler entered into the plea agreement on the

25 Thursday before a hard trial date for the coming Monday.  In the written plea agreement,

26 petitioner acknowledged, *inter alia*: (a) that he was entering an *Alford* plea "to avoid the

27  _____

28      [6]#18, Ex. 7.

                                    -6-

possibility of being convicted of more offenses or of a greater offense if I were to proceed to trial on the original charge(s) and of also receiving a greater penalty;" (b) that the plea was "based upon my belief that the State would present sufficient evidence at trial that a jury would return a verdict of guilty of a greater offense or of more offenses than that to which I am pleading guilty to;" (c) that "I have discussed with my attorney any possible defenses, defense strategies and circumstances which might be in my favor;" and (d) that "[m]y attorney has answered all my questions regarding this guilty plea agreement and its consequences to my satisfaction and I am satisfied with the services provided by my lawyer."[7]

During the plea colloquy, petitioner acknowledged, *inter alia*, that he was 47 years old; that he had four years of college education; that he read, wrote, and understood the English language; and that he had read, understood and signed the written plea agreement.  When the court asked him whether he had any questions about any part of the plea agreement, whether for counsel or the court, Hibbler inquired as to whether he would receive credit for time served.  The court told him that he would receive credit for time served and asked him whether he had any other questions.  Hibbler responded: "That's it."[8]

After the State made its proffer, Hibbler further acknowledged, *inter alia*: (a) that he felt comfortable that he had had a chance to talk with counsel about how tactically to handle the case; and (b) that one of the reasons that he was entering an *Alford* plea was because of the possibly much greater sentence that he might receive if convicted at trial, on the coming Monday, on the original charges.[9]

The state district court found that Hibbler's plea was freely and voluntarily made.[10]

Prior to the matter coming on for sentencing, defense counsel filed a defense sentencing memorandum.  The memorandum stated, *inter alia*:

---

[7]#18, Ex. 17, at 1-2, 4 & 5.

[8]#18, Ex. 18, at 3 & 6-7.

[9]*Id.* at 10-11.

[10]*Id.*, at 11.

-7-

1
2
3
4
5

> Further, the defense had planned to present, at trial, the testimony of a neuropsychologist, Dr. David Schmidt, as well as an Assistant Professor of Pharmacy Practice, Mark Decerbo, Pharm.D., BCPS, Mr. Decerbo would have testified that the medication Ken was taking at the time of the incident, Ativan, can produce in a minority of patients the opposite reaction than that for which it is prescribed.  In this case, it could very well have produced behavior of intense hostility and rage, instead of what it was intended to do – relieving anxiety.

6   #18, #19, at 2.

7       Defense counsel attached with the memorandum an article from a pharmacotherapy

8   journal regarding paradoxical reactions to the class of medication that includes lorazepam.[11]

9       When the matter came on for sentencing on June 22, 2005, the public defender and

10  Hibbler advised the court that petitioner wished to withdraw his plea and to represent himself,

11  with standby counsel.  The court withdrew the public defender as counsel and appointed

12  replacement counsel to discuss with Hibbler the issues of representing himself with standby

13  counsel and whether to file a motion to withdraw guilty plea.  A written motion would be

14  required to pursue the latter issue.  Laura Ungaro was confirmed as replacement counsel on

15  June 27, 2005, and the matter was reset for June 29, 2005.[12]

16      As discussed with regard to Ground 3, the matter came back before the state district

17  court on June 29, 2005, with Hibbler present in person with Ungaro as replacement counsel.

18  Ungaro advised the court that she could not "find any reason for him to be able to withdraw

19  his plea."  The court asked counsel:  "What about Mr. Hibbler's desire to represent himself?"

20  Counsel advised that she had conferred with Hibbler and that "he decided that he would like

21  to have representation."  The court asked Hibbler: "Is that right, Mr. Hibbler?"  He responded:

22  "Yes, it is."  The matter thereafter was set down for sentencing.[13]

23      When the matter came on for sentencing on July 25, 2005, Hibbler did state that he

24  did not hurt his daughter intentionally and that "[t]he medication that I was on did something

25

26      [11] See Ex. A to #18, Ex. 19.  The Court discusses the article further, *infra*.

27      [12] #18, Exhs. 20 & 21.

28      [13] #18, Ex. 22.

1    to my brain." He further stated that he had not had effective counsel from the beginning to

2    establish that he had acted irrationally and was under the influence of a drug. Replacement

3    counsel maintained that the incident "may well have been as a result of a drug interaction,

4    bad drug interaction" and suggested that he be given the benefit of the doubt.[14]

5         The Court notes, however, that, after conferring with replacement counsel as to his

6    options, Hibbler had not pursued a motion to withdraw his plea on June 29, 2005 – whether

7    on an argument premised upon original counsel's failure to properly advise him as to a

8    defense based upon the effects of the medication or otherwise – when he had the opportunity

9    to pursue the issue at that time. He instead had accepted the representation of replacement

10   counsel who just had stated on the record, in Hibbler's presence, that she did not find any

11   basis to move to withdraw his plea.

12        When Hibbler filed a state post-conviction petition on May 15, 2006, he alleged in state

13   Ground 3 principally that original defense counsel failed to prepare and present an insanity

14   or diminished capacity defense. Within the ground, he further alleged that defense counsel

15   told him that there was absolutely no defense to what he had done and that he must take full

16   responsibility for his actions. He alleged that defense counsel told him and his family on a

17   conference call that there was no insanity or diminished capacity defense in Nevada. He

18   further alleged, however, that he and his family had researched the issue prior to the call such

19   that "they were all aware that these were available defenses." He filed identical affidavits by

20   family members to this effect with his state court reply.[15]

21        In state Ground 3, Hibbler presented broad allegations, without factual specifics, that

22   counsel "had a tremendous amount of available evidence which, if presented to a jury,

23   would've cast reasonable doubt" based upon diminished capacity or insanity. He alleged

24

25        [14]#18, Ex. 23, at 4-8. The victim's mother, over defense objection, apparently was less sanguine in

26   this regard, reflecting that there may have been another side to the story had the defense maintained at trial
     that the incident was out of character for Hibbler. See id., at 10-11.

27

28        [15]#18, Ex. 25, at 10-10a (electronic docketing pages 15-16); id., Ex. 30, at electronic docketing pages
     11-13.

broadly, again without factual specifics, that the defenses would have been established at trial by "the bizarre nature of this crime, followed by overwhelming evidence of mental illness, a criminal responsibility tests results, psychological testing results, history of taking psychotropic medications, diagnosis by mental health professionals, reports from doctors at the Clark County Detention Center Mental Health Unit where Mr. Hibbler was being treated, along with testimony of family members, [and] Mr. Hibbler's own testimony and sincere remorse for injuring his own daughter."[16]  In state Ground 1, petitioner had alleged in pertinent part that he had been diagnosed with severe depression just prior to the crime, that he had been placed on Ativan, and that he had no recollection of the incident "possibly because of the negative side effects of the drug Ativan."

Critically, the state petition did not identify a single expert witness who -- following a review specifically of Hibbler and his case history -- had rendered an opinion that it was more likely than not that his actions on July 24, 2003, resulted from a paradoxical reaction to Altivan, such that Hibbler could not know or understand the nature and capacity of his actions.[17]

The Supreme Court of Nevada rejected the corresponding claim presented to that court on the following grounds:

> . . . [A]ppellant claimed that defense counsel was ineffective for misadvising him that there were no insanity or diminished capacity defenses in Nevada. Appellant has failed to show that defense counsel was deficient or that he was prejudiced.  Defense counsel correctly advised appellant that there is no diminished capacity defense in Nevada.[FN10]  Moreover, appellant's claim that defense counsel misadvised him about an insanity defense is belied by the record.  The record indicates that defense counsel intended to present expert

---

[16]#18, Ex. 25, at 10-10a  (electronic docketing pages 15-16).

[17]Under Nevada law, the defendant bears the burden of establishing his insanity by a preponderance of the evidence.  *See,e.g., Finger v. State*, 117 Nev. 548, 562-63, 27 P.3d 66, 76 (2001).  A Nevada state post-conviction petition must be supported by specific factual allegations.  *See,e.g., Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984).  Broad allegations, for example, that certain witnesses could establish the petitioner's innocence that are not accompanied by the witness' names and descriptions of their intended testimony constitute merely "bare" and "naked" allegations that do not entitle a petitioner to a state court evidentiary hearing.  *Id.*

-10-

testimony at trial that appellant was "under a neurological impairment at the time of the offense." Defense counsel stated in the sentencing memorandum that, at trial, he intended to present expert testimony from a neuropsychologist and an assistant professor of pharmacology who would testify that Ativan could have possibly produced a "hostile reaction" in appellant's case. And even assuming counsel misadvised appellant about an insanity defense, appellant failed to demonstrate that he would not have pleaded guilty and would have instead insisted on proceeding to trial. Appellant substantially benefited by entering into the plea agreement by avoiding more serious charges,[FN11] and there is no indication in the record that an insanity defense would have been successful at trial.[FN12] Thus, the district court did not err in denying this claim.

> [FN10] Crawford v. State, 121 Nev. 744, 757, 121 P.3d 582, 591 (2005); Ogden v. State, 96 Nev. 258, 262, 607 P.2d 576, 578 (1980); see also Fox v. State, 73 Nev. 241, 244-45, 316 P.2d 924, 926 (1957).

> [FN11] Appellant was initially charged with first-degree kidnapping with the use of a deadly weapon . . .; attempted murder with the use of a deadly weapon . . .; and battery with the use of a deadly weapon resulting in substantial bodily harm . . . .

> [FN12] See Finger v. State, 117 Nev. 548, 576, 27 P.3d 66, 84-85 (2001).

#18, Ex. 38, at 5-6.

The state supreme court's finding that Hibbler's claim that counsel misadvised him was belied by the record, while perhaps debatable, did not constitute an unreasonable determination of fact in light of the state court record. Petitioner argues that what defense counsel filed in the record did not dictate a conclusion as to what counsel told petitioner in conference. However, it nonetheless was not unreasonable for the state courts to conclude that the allegation by petitioner and his family that counsel advised him that there was no insanity defense in his case was implausible given that a prior court filing reflected that counsel in fact was pursuing the defense. The Court cannot say that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the factual finding is supported by the record.

The state supreme court further held that petitioner could not demonstrate prejudice even if it were assumed *arguendo* that counsel misadvised him that there was no insanity

1  defense.  This alternative holding was neither contrary to nor an unreasonable application of

2  clearly established federal law under the "doubly deferential" standard of review applicable

3  in this context.  *See Pinholster, supra*.  Significantly, the state high court relied, in the

4  conjunctive, on the fact that petitioner avoided more serious sentencing exposure *and* the fact

5  that there was no indication in the state court record that an insanity defense would have

6  been successful at trial.  Viewed objectively, a defendant perhaps might not enter a plea

7  solely to avoid more serious exposure if he were advised that he had a potentially viable

8  defense.  However, as the state supreme court decision indicates, the most critical point is

9  that Hibbler at bottom never presented evidence or specific factual allegations in the state

10  court tending to establish a reasonable probability that an insanity defense likely would have

11  succeeded at trial.

12       In this regard, defense counsel stated in the criminal proceeding filings only:  (a) that

13  the defense would have presented the testimony of the neuropsychologist, Dr. Schmidt, Ph.D,

14  and the pharmacy assistant professor, Decerbo; and (b) that Decerbo would have testified

15  that Ativan "can produce in a minority of patients the opposite reaction than that for which it

16  is prescribed."  Counsel thereupon maintained that, "[i]n this case, it could very well have

17  produced behavior of intense hostility and rage, instead of what it was intended to do –

18  relieving anxiety." All such statements by counsel – whether describing testimony or drawing

19  conclusions – of course do not constitute competent evidence.  The record before the state

20  courts does not contain any competent evidence – such as a copy of an expert report –

21  reflecting that an appropriately qualified expert witness, following a review specifically of

22  Hibbler and his case history, rendered an opinion that it was more likely than not that his

23  actions on July 24, 2003, resulted from a paradoxical reaction to Altivan, such that Hibbler

24  could not know or understand the nature and capacity of his actions.

25       Nor does the pharmacotherapy article attached with the defense sentencing

26  memorandum constitute such evidence.  The article is directed not to Altivan or lorazepam

27  specifically but instead discusses the class of medications, benzodiazepines, that includes

28  lorazepam.  The article evaluates cases of paradoxical reactions to benzodiazepines in

previous biomedical literature.   The article reported only one prior case history where administration of lorazepam to an adult was followed by a behavioral change.   A phobic 22-year-old woman reported feelings of distress and uncontrollable anger, was unable to perform her functions at work, and responded to a situation with a coworker by yelling and screaming, which was out of character for her.   Nothing in that one case history reflects that the young woman physically harmed anyone and/or that she did so after having lost the capacity to understand what she was doing.   More to the point, the article – standing alone – does not constitute competent evidence that *in Hibbler's case* it was more likely than not that his actions on July 24, 2003, resulted from a paradoxical reaction to lorazepam such that he could not know or understand the nature and capacity of his actions.   An article merely reviewing reports of paradoxical reactions from benzodiazepines "in less than 1% of patients" and that could not discern the exact mechanism of the paradoxical reactions hardly tended to establish that it was more likely than not that Hibbler could not understand the nature and capacity of his actions on July 24, 2003.   Yet the article is the only factual material ever presented in the state court record in this regard.

Plaintiff's broad allegations in the state petition, with no specific factual allegations identifying any other actual evidence supporting such a defense, did not present the state courts with any additional factual substance in support of the claim.   Plaintiff's broad assertions in the state petition in truth presented only bald unsupported conjecture that an insanity defense would have been successful at trial.   There was no evidence directly supporting that conjecture in the state court record.

Accordingly, in light of the record before the state courts, the state supreme court's rejection of petitioner's claim of ineffective assistance of counsel was neither contrary to nor an unreasonable application of clearly established federal law.

Ground 1 therefore does not provide a basis for federal habeas relief.

### Ground 2

In Ground 2, petitioner alleges that he was denied effective assistance of counsel because defense counsel knew or should have known that his plea would not be knowing,

voluntary and intelligent "yet they induced and assisted Hibbler in going forward with the plea." Petitioner alleges, in particular: (1) that counsel knew that he had serious neurological issues and were aware that he was taking five different medications during pretrial incarceration; (2) that counsel nonetheless allegedly never attempted to have him evaluated regarding his competency to stand trial or enter a plea; (3) that counsel never explained the consequences of the plea to him; (4) that he allegedly was under the influence of anti-psychotic medication at the time of his plea, but he was not asked whether he was under the influence of drugs at the time of his plea; and (5) that he correctly answered "yes" or "no" questions during the plea colloquy only because his attorneys directed him as to what to say.

The Court incorporates the discussion, *supra*, at 6-7 regarding the circumstances of the plea and petitioner's express acknowledgments in the written plea agreement and during the plea colloquy, which is pertinent as well to Ground 2.

In further regard to the allegations in Ground 2, petitioner acknowledged in the written plea agreement, *inter alia*: (a) his understanding of approximately three pages within the plea agreement detailing the consequences of the plea agreement, including, *inter alia*, his sentencing exposure under the agreement and the State's agreement to stipulate to a sentence of five to fifteen years; (b) that he was "not now under the influence of any . . . drug which would in any manner impair my ability to comprehend or understand this agreement or the proceedings surrounding my entry of this plea;" and (c) that "[m]y attorney has answered all my questions regarding this guilty plea agreement and its consequences to my satisfaction and I am satisfied with the services provided by my lawyer."[18]

Counsel further certified at the end of the agreement that he had explained the charges and consequences of the plea being entered, that to the best of his knowledge petitioner was competent and understood the charges and consequences of the plea, and that petitioner "[w]as not under the influence of intoxicating liquor, a controlled substance or other drug at the time" that counsel consulted with petitioner regarding the plea. #18, Ex. 17, at 6.

---

[18]#18, Ex. 17, at 1-3, 4 & 5.

-14-

1    The transcript of the plea colloquy does not support an allegation that petitioner merely

2    parroted "yes" or "no" responses in robotic fashion without discernment or understanding.

3    Petitioner responded with specific information when requested to do so, provided narrative

4    answers to questions, asked the court to repeat questions when he could not hear the

5    question, and engaged in back-and-forth discourse with the court when he had a question or

6    wanted clarification or confirmation on a specific point regarding the consequences of the

7    plea.[19]

8            The state district court found that Hibbler's plea was freely and voluntarily made.[20]

9            Petitioner's competency to proceed had been examined previously in the state court

10   proceedings.  Petitioner later unsuccessfully challenged on state post-conviction review the

11   authority of the justice court to order a competency examination.  However, the justice court

12   nonetheless did order such an examination – on a defense motion.  Following the psychiatric

13   evaluation ordered, petitioner was found competent to proceed.[21]

14          Petitioner does not identify any competent medical evidence in the state court record

15   reflecting a material change in his psychiatric condition following the prior competency

16   determination that was found to be clinically significant by a qualified health care provider.

17   Statements by counsel for either the State or the defense in arguing defense requests for

18   release do not constitute competent medical evidence that petitioner had ceased to be

19   competent.  What is notably lacking in the state court record is any opinion by a qualified

20   health care provider that petitioner had ceased to be competent.[22]

21

22          [19]#18, Ex. 18, at 3, lines 15, 17 & 24; at 4, lines 2-4, 10 & 16; at 5, line 22; at 6, lines 3 & 23-24; at 7,
23   lines 3-5; at 9, line17; at 10, lines 1-25; and at 11, lines 1-8.

24          [20]*Id.*, at 11.

25          [21]See #18, Ex. 1, at electronic docketing pages 2-3.

26          [22]See #18, Exhs. 9-14.  Defense counsel argued in the briefing only with respect to Hibbler's mental
     state *at the time of the offense*.  Counsel for the State referred to "documentation provided by Defendant
27   showing he has significant mental issues as he is currently prescribed several psychotropic drugs." #13, at 5.
     The medical records attached to the defense motion – which pertained to pulmonary and cardiovascular
28                                                                                                    (continued...)

-15-

1    Federal habeas counsel erroneously states that Hibbler was "taking five different anti-
2    psychotic medications," and this misrepresentation runs through counsel's entire argument.
3    The state court record does not reflect that petitioner was on multiple psychiatric medications.
4    Four of the five medications listed were heartburn (Zantac), cholesterol (Mevacor), blood
5    pressure (Vasotec), and diuretic (Maxide) medications.[23]   There is no competent medical
6    evidence in the state record that any of these medications – such as heartburn medication
7    – would have prevented Hibbler from being able to understand the plea proceedings.

8    The only medical evidence referenced on federal habeas review in the state court
9    record in this regard (see #17, at 8, line 15) consists of: (a) discharge notes from a November
10   29, 2004, hospital visit for a pulmonary and cardiovascular condition; and (b) what appears
11   to be a record from the Clark County Detention Center (CCDC) of prescription medications
12   at one point.  These records were filed with a December 14, 2004, defense motion for release
13   on petitioner's own recognizance.[24]

14   The November 29, 2004, discharge notes list Zoloft – a medication used to treat, *inter*
15   *alia*, anxiety and depression, not psychosis – as one of the medications that Hibbler had been
16   taking.  The discharge notes – which concern the pulmonary and cardiovascular condition that
17   Hibbler had presented with – otherwise do not discuss any psychiatric condition or the effects
18   of Zoloft on Hibbler's competency.

19   The CCDC prescription record reflects that Hibbler was prescribed 50 milligrams of
20   Zoloft every morning ("qam") for ninety days, with a start date of September 1, 2004, and an
21   end date of December 1, 2004.  Petitioner has not pointed to any competent medical
22   evidence in the state court record reflecting that he was prescribed Zoloft – or any other
23   psychiatric medication – after December 1, 2004.  His plea was on May 5, 2005.

24   _____

25   [22](...continued)
26   issues – did not correspond to this description by counsel for the State.  See #12.  In all events, statements
     by counsel, any counsel, do not constitute evidence, much less competent medical evidence.

27   [23]Compare #48, at 13-16, with #18, Ex. 12, at 2.  Misrepresenting the facts is, at best, unpersuasive.

28   [24]See #18, Ex. 12, Exhibit A thereto.

1      Even if were assumed, *arguendo*, that petitioner still was taking Zoloft in May 2005,

2 there is no competent medical evidence in the state court record reflecting that the level that

3 he – *arguendo* – was taking at the time would have rendered him not competent to enter a

4 plea.

5      As discussed as to Ground 1, when the matter came on for sentencing on June 22,

6 2005, counsel and Hibbler advised the court that petitioner wished to withdraw his plea and

7 to represent himself, with standby counsel.  At that time, Hibbler allegedly stated – contrary

8 to his express acknowledgment in the plea agreement – that he was not at his full mental

9 capacity at the time of the plea because he had been on psychiatric drugs.[25]

10      However, on June 27, 2005, after conferring with replacement counsel, petitioner

11 accepted the representation of replacement counsel after she had just stated – on the record

12 and in petitioner's presence – that she saw no basis for a motion to withdraw his plea.[26]

13      When Hibbler filed a state post-conviction petition on May 15, 2006, he alleged in state

14 Ground 2, *inter alia*, that counsel was ineffective for failing to have his competency evaluated

15 before he entered a plea.  Petitioner presented no specific factual allegations identifying

16 specific competent medical evidence – by witness and content – that would have established

17 that he was not competent to proceed at the time of his May 5, 2005, plea and that counsel

18 was aware of such evidence.[27]

19      The Supreme Court of Nevada – after rejecting petitioner's claim that defense counsel

20 should have objected to the competency evaluation that was conducted at the request of the

21 defense – rejected the claim corresponding to federal Ground 2 on the following grounds:

22
23
24         . . . [A]ppellant claimed that defense counsel was ineffective for failing to have him properly evaluated . . . and ensure that he was competent at the time he entered his guilty plea.  Additionally, appellant claimed that his guilty plea was invalid because he was under the influence of anti-psychotic

25

26   [25]Page 5 of Exhibit 20 in #18 is not in the exhibit.  Cf. #17, at 18-9 (amended petition).

27   [26]#18, Ex. 22.

28   [27]See n. 17, *supra*, regarding Nevada habeas pleading requirements.

1
2
3
4
5
6
7
8

> medications at the entry of his plea. Appellant failed to demonstrate that defense counsel's performance was deficient or that he was prejudiced. There is no evidence in the record indicating that defense counsel or the district court had reason to doubt appellant's competency when he entered his plea. The transcript of the plea canvass indicates that appellant appropriately responded to the district court's questions and requested clarification when he did not understand the proceedings. Further, appellant acknowledged in the written plea agreement that he was not under the influence of any drug which would impair his ability to understand the proceedings surrounding his entry of plea. The totality of the circumstances indicates that appellant entered his plea knowingly and voluntarily. Thus, the district court did not err in denying these claims.

9  #18, Ex. 38, at 3-4 (citation footnotes omitted).

10  The state supreme court's rejection of this claim was neither contrary to nor an

11 unreasonable application of clearly established federal law and was not based upon an

12 unreasonable determination of fact in light of the state court record.

13  In *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), the

14 Supreme Court stated:

15
16
17
18
19

> . . . . [T]he representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

20  431 U.S. at 73-74, 97 S.Ct. at 1629. The *Blackledge* Court observed that "a petitioner

21 challenging a plea given pursuant to procedures [similar to those employed by the state court

22 in this case] will necessarily be asserting that not only his own transcribed responses, but

23 those given by two lawyers, were untruthful." 431 U.S. at 80 n.19, 97 S.Ct. at 1632 n. 19.

24 Under *Blackledge*, a collateral attack that directly contradicts the responses in connection with

25 the plea proceedings "will entitle a petitioner to an evidentiary hearing only in the most

26 extraordinary circumstances." *Id*.

27  Hibbler expressly acknowledged in the written plea agreement that he was not under

28 the influence of any drug that would in any manner impair his ability to understand the plea

-18-

agreement or proceedings.  His counsel made a similar certification.  There is no competent medical evidence in the state court record reflecting that petitioner was even being prescribed Zoloft at the time that he entered his plea on May 5, 2005, much less that the medication in fact would have rendered him not competent to enter a plea.  Hibbler's own unsworn self-serving statements a month after the plea do not establish by competent evidence either that he was not competent at the time of his plea or what counsel was aware of prior to the plea.  Nor did petitioner pursue such statements during the state criminal proceedings but instead accepted the representation of counsel who stated – in Hibbler's presence – that there was no basis for a motion to withdraw the plea.  Petitioner's nonspecific factual allegations in his state petition did not identify any specific competent medical evidence – by witness and content – supporting his claim of incompetency at the time of his plea.

Given the dearth of any competent medical evidence in the state court record supporting a claim that petitioner was not competent at the time of the plea, after petitioner previously had been evaluated and found competent, the state supreme court's rejection of the claim was neither contrary to nor an unreasonable application of clearly established federal law.

Ground 2 therefore does not provide a basis for federal habeas relief.[28]

### Ground 3

In amended Ground 3, petitioner alleges that he was denied effective assistance of counsel when counsel failed to present Hibbler's request to withdraw his plea to the state district court.  Petitioner alleges that he told counsel that he wanted to withdraw the plea because he had been under the influence of medications at the time, that counsel nonetheless represented to the court that there was no basis to withdraw the plea, and that this did not represent his position.  He further alleges that she misstated the legal standard.

---

[28]Petitioner's subsidiary allegation that he was not advised of the consequences of his plea by counsel contradicts his representations in both the plea agreement and plea colloquy.  His allegation that he gave only nondiscerning "yes" or "no" responses only as cued by counsel further is belied by the transcript of the plea colloquy.

-19-

1    As discussed regarding the prior grounds, when the case came on for sentencing on

2  June 22, 2005, defense counsel and Hibbler advised the court that he wished to withdraw his

3  plea and to represent himself, with standby counsel.  The court withdrew the public defender

4  as counsel and appointed replacement counsel to discuss with Hibbler the issues of

5  representing himself with standby counsel and whether to file a motion to withdraw guilty plea.

6  Laura Ungaro was confirmed as replacement counsel on June 27, 2005, and the matter was

7  reset for June 29, 2005.[29]

8    The matter came back before the state district court on June 29, 2005, with Hibbler

9  present in person with Ungaro as replacement counsel.  Ungaro advised the court that she

10  could not "find any reason for him to be able to withdraw his plea."  The court asked counsel:

11  "What about Mr. Hibbler's desire to represent himself?"  Counsel advised that she had

12  conferred with Hibbler and that "he decided that he would like to have representation."  The

13  court asked Hibbler: "Is that right, Mr. Hibbler?"  He responded: "Yes, it is."  The matter

14  thereafter was set down for sentencing.[30]

15    The Supreme Court of Nevada rejected the corresponding claim on the following

16  grounds:

17             . . . [A]ppellant claimed that defense counsel was
       ineffective for failing to file a presentence motion to withdraw
18       appellant's guilty plea.  Appellant failed to demonstrate that his
       counsel's performance was deficient or that he was prejudiced.
19       Prior to sentencing, defense counsel informed the district court
       that appellant wanted to withdraw his guilty plea.  Because the
20       motion was to be based on ineffective advice of counsel, the
       district court allowed counsel to withdraw and appointed
21       substitute counsel.  After discussing his options with his new
       counsel, appellant decided not to withdraw his guilty plea.
22       Further, appellant failed to demonstrate that such a motion would
       have been successful because, as previously discussed, the
23       record indicates that the guilty plea was knowing, voluntary and
       intelligent.  Thus, the district court did not err in denying this
24       claim.

25  #18, Ex. 38, at 5 (citation footnote omitted).

26  _____

27    [29]#18, Exhs. 20 & 21.

28    [30]#18, Ex. 22.

1    The state supreme court's rejection of this claim was neither contrary to nor an
2    unreasonable application of clearly established federal law and was not based upon an
3    unreasonable determination of fact in light of the state court record.

4    The state supreme court's construction of the substance of the choice made by Hibbler
5    on June 29, 2005, was not an unreasonable determination of fact in light of the state court
6    record. On June 22, 2005, Hibbler advised the court that he wanted to represent himself with
7    standby counsel and that he wanted to move to withdraw his guilty plea. He was appointed
8    replacement counsel thereafter initially only to advise him with respect to these two choices.
9    On June 29, 2005, replacement counsel advised the court, on the record and in Hibbler's
10   presence, that she saw no basis for a motion to withdraw the plea. Immediately thereafter,
11   Hibbler, accepted the representation of replacement counsel on the record. The choice that
12   he made was clear. Instead of seeking self-representation so that he could pursue a motion
13   to withdraw his plea, he instead accepted the representation of counsel who had just stated
14   in his presence that she was no basis for a motion to withdraw the plea. Hibbler in essence
15   thereby chose not to pursue a motion to withdraw plea. He cannot make that choice and then
16   later claim ineffective assistance of counsel. The choice made not to pursue a motion to
17   withdraw the plea was his choice on the state court record presented.

18   The state supreme court's holding that petitioner could not establish prejudice further
19   was neither contrary to nor an unreasonable application of clearly established federal law.
20   Even if a reviewing court were to assume, *arguendo*, that replacement counsel misstated the
21   standard governing a presentence motion to withdraw plea, the state court record does not
22   contain evidence tending to establish a reasonable probability that the motion would have
23   been successful. As discussed with regard to federal Ground 2, the state court record does
24   not contain competent medical evidence supporting a claim that petitioner was not competent
25   at the time of his plea. Petitioner instead had been found competent to proceed earlier in the
26   state court proceedings.

27   Ground 3 therefore does not provide a basis for federal habeas relief.
28   / / / /

-21-

1    IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus shall be

2    DENIED and that this action shall be DISMISSED with prejudice on the merits.

3        IT FURTHER IS ORDERED that petitioner's motion (#49) for an evidentiary hearing

4    is DENIED.

5        IT FURTHER IS ORDERED that a certificate of appealability is GRANTED.

6        The Clerk of Court shall enter final judgment accordingly, in favor of respondents and

7    against petitioner, dismissing this action with prejudice.

8        DATED:  This 14th day of June, 2011.

_____
ROBERT C. JONES
Chief United States District Judge